UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

CHRISTOPHER L. YATES,

        Plaintiff,

Case No. 2:18-cv-180

v.

Honorable Paul L. Maloney

UNKNOWN ROGERS et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. §§ 1983, 1985, 1997, and state law. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint.

**Discussion**

    I.    <u>Factual allegations</u>

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Michigan. The events about which he complains occurred at that facility and the Chippewa Correctional Facility (URF) in

Kincheloe, Michigan. Plaintiff sues the following MDOC employees at URF: PREA[1] Coordinator Lisa Belanger and Corrections Officer Unknown Rogers.

Plaintiff alleges that on January 8, 2017, Defendant Rogers was "shaking down" another prisoner when Plaintiff walked by him. Rogers stopped Plaintiff and said, "Hey big black buck time for another shakedown. I love shaking down you big black bucks." (Compl., ECF No. 1, PageID.8.) Plaintiff responded that he would try to move to another cell on the other side of the facility to get away from Rogers. Rogers told Plaintiff that "he could get to [Plaintiff] on the Eastside or Westside and that Plaintiff should shut up and that he has friends on the Westside and Eastside of the facility." (*Id.*) Plaintiff filed a grievance against Rogers later that day.

On February 4, Rogers allegedly walked into Plaintiff's cube and asked one of his cubemates for his identification. Rogers also said to Plaintiff, "[N]othing happened with your investigation concerning you reporting me for sexual abuse and it's not over I'm still going to get you." (*Id.*) Plaintiff reported this threat to "PREA." (*Id.*)

On March 15, Rogers entered Plaintiff's cube and told Plaintiff that "he could do what he w[a]nted to do without consequence because this facility (Chippewa) doesn't value black inmates lives and believes we should never have been freed from slavery." (*Id.*, PageID.9.) Plaintiff reported this incident to other officers and filed a grievance about it that same day.

On March 22, Plaintiff was called to the facility inspector's office. To get to this office, Plaintiff had to pass through a "secluded shack" manned by a single officer. (*Id.*) As Plaintiff approached the shack, he noticed that Rogers was inside. Plaintiff told other officers that he was afraid of going through the shack, but he was apparently ordered to do so anyway. After Plaintiff went into the shack, Officer Rogers conducted an "impermissible and sexually degrading

---

[1] PREA is an acronym for the Prison Rape Elimination Act, 34 U.S.C. § 30301 et seq.

2

shakedown" of Plaintiff. (*Id.*) Plaintiff then proceeded to the inspector's office. Later that day, Plaintiff filed a grievance about the incident, which was rejected by the grievance coordinator as duplicative of another grievance.

On June 21, when Plaintiff was leaving the prison yard, Officer Rogers allegedly stopped Plaintiff and told him that "he still fantasizes about sucking plaintiff's big black dick." (*Id.*, PageID.10.) Plaintiff told Rogers that he would write another grievance on him and report him to his supervisors. Rogers responded, "[H]ow did that work out last time?" (*Id.*) Rogers then asked for Plaintiff's identification and ordered him to submit to a "sexually exploitative" pat down search. (*Id.*) After completing the search, Rogers told Plaintiff that unless Plaintiff "complied with his unwanted and continuous sexual advances [Rogers] would continue to harass plaintiff and have other staff members do the same." (*Id.*) Plaintiff subsequently filed a grievance about this incident.

On July 7, Rogers approached Plaintiff and some other Muslim prisoners and told the group, "[You're] walking with the wrong person and that I should thank him for having shaken [Plaintiff] down." (*Id.*, PageID.11.) Later that day, after the yard closed, Rogers walked toward Plaintiff and began to "harass" him and a fellow Muslim prisoner. (*Id.*) Rogers issued Plaintiff a "false" and "retaliatory" class III misconduct ticket for not leaving the yard quick enough, even though there was another officer standing near Plaintiff and Rogers walked past 25 other prisoners on the yard to reach Plaintiff. (*Id.*) Plaintiff filed a grievance about this incident.

On July 18, Defendant Belanger completed a "skewed" investigation into Plaintiff's PREA grievance about being sexually abused by Officer Rogers. (*Id.*) She concluded that there was insufficient evidence to support Plaintiff's allegations of sexual abuse. (*See* Mem. to Pl., ECF No. 1-3, PageID.22.) Plaintiff asserts that she has "made it clear on numerous

occasions that she 'didn't believe officers should be punished for abusing prisoners and that if she found any evidence indicating such she would destroy it.'" (*Id.*, PageID.11-12.) That same day, Plaintiff filed a grievance against Belanger for conducting a "skewed" and "biased" investigation. (*Id.*, PageID.12.)

Based on the foregoing, Plaintiff claims that Officer Rogers retaliated against him for filing grievances and complaints, in violation of Plaintiff's rights under the First Amendment. He also claims that Rogers and Belanger were deliberately indifferent to his health and safety, in violation of the Eighth Amendment. And he claims that Rogers' actions deprived him of due process under the Fourteenth Amendment.

As relief, Plaintiff seeks compensatory and punitive damages.

II.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court

4

to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

### III. 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Eighth Amendment**

Plaintiff claims that Defendants Rogers and Belanger were deliberately indifferent to Plaintiff's health and safety when Rogers sexually assaulted and harassed Plaintiff, and when Belanger refused to conduct a "fair and impartial" investigation into Plaintiff's complaints about Rogers. (Compl., PageID.14.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). "[B]ecause the sexual harassment or abuse of an

5

inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted).

1. Defendant Rogers

Plaintiff alleges that Rogers verbally harassed him, referring to Plaintiff as a "big black buck," telling Plaintiff to "shut up," threatening to "get" Plaintiff, expressing disdain toward black prisoners, and suggesting that Rogers intended to sexually assault Plaintiff.

Allegations of verbal harassment and threats by prison officials toward an inmate cannot support an Eighth Amendment claim because such conduct does not constitute punishment within the meaning of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987). Nor does it rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See Torres v. Oakland Cty.*, 758 F.2d 147, 152 (6th Cir. 1985).

Similarly, courts have repeatedly held that sexual harassment without physical contact does not give rise to an Eighth Amendment claim. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. Mar. 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Zander v. McGinnis*, No. 97-

1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). For the same reasons, Defendant Rogers' alleged statements and threats, although deplorable and unprofessional, are not sufficient to give rise to an Eighth Amendment claim.

Plaintiff also alleges that Rogers gave him one "sexually exploitative" pat-down search, and one "impermissible and sexually degrading shakedown." Not "every malevolent touch by a prison guard gives rise to a[n Eighth Amendment] cause of action." *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Plaintiff provides no specific details about these searches, but the Court of Appeals has on several occasions found no Eighth Amendment violation for pat-down searches and isolated incidents of sexual touching. *See, e.g., Solomon v. Mich. Dep't of Corrs.*, 478 F. App'x 318, 320-21 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis and pressing an erect penis into the prisoner's buttocks, do not rise to the level of a constitutional violation); *Tuttle v. Carroll Cty. Detention Ctr.*, 500 F. App'x 480, 482 (6th Cir. 2012) (allegation that officer grabbed the detainee's genitals and "squeezed them really hard" during a pat-down search is too "subjective and vague" to state a claim); *Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (prisoner's claim that an officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did

7

not state an Eighth Amendment claim); *see also Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

Although Plaintiff characterizes Defendant's conduct as "sexually exploitative" and "sexually degrading," he alleges no facts that would distinguish the facts in his case from those in the foregoing cases. Indeed, Plaintiff's allegations are more "subjective and vague" than the allegations in *Tuttle*. *See Tuttle*, 500 F. App'x at 482. Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Rogers.

2. Defendant Belanger

Plaintiff alleges that PREA Coordinator Belanger was deliberately indifferent to Plaintiff's health and safety because she failed to conduct an adequate investigation into Plaintiff's complaints against Rogers.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish liability under the Eighth Amendment, Plaintiff must show that Defendant acted with "deliberate indifference" to a substantial risk of harm to the prisoner. *Farmer,* 511 U.S. at 834. Deliberate indifference means that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must

8

also draw the inference." *Id.* at 837. The requirement for a substantial risk of harm "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

Plaintiff's claim fails because he does not allege that Belanger disregarded a substantial risk of harm to Plaintiff. As indicated above, Plaintiff has not alleged conduct by Rogers that rises to the level of harm prohibited by the Eighth Amendment. Moreover, there is no indication that Belanger was aware of a significant risk of harm. In his PREA grievance, Plaintiff apparently reported harassing statements made by Rogers, including a vague threat to "get" Plaintiff. These allegations do not suggest that Plaintiff was subject to a risk of harm, let alone that Belanger was deliberately indifferent to such a risk. Thus, Plaintiff fails to state an Eighth Amendment claim against Defendant Belanger.

### B. Retaliation

Plaintiff also claims that Rogers' conduct was motivated by Plaintiff's grievances and complaints. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

9

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). In this case, however, Plaintiff has not alleged a plausible connection between any of Rogers' threats and actions and Plaintiff's grievances.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening).

Plaintiff simply concludes that because he filed grievances against Rogers within days, weeks, or months before Rogers' statements and actions, Rogers' conduct must have been motivated by Plaintiff's grievances. The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010).

Furthermore, in this case, Plaintiff's allegations suggest that his grievances did not, in fact, motivate Rogers' actions. Defendant started harassing and threatening Plaintiff before Plaintiff engaged in any protected conduct, and Defendant continued that harassment afterward. Defendant also told Plaintiff that he could do as he pleased without suffering consequences, and that he would continue to harass Plaintiff until Plaintiff "complied" with his "sexual advances." These allegations suggest that Defendant was motivated by a simple desire to harass Plaintiff (or to conduct pat-down searches) rather than a desire to retaliate for Plaintiff's protected conduct. Thus, Plaintiff's allegations fail to satisfy the third element of a retaliation claim.

In addition, the Court notes that much of Rogers' conduct would not qualify as an adverse action. An adverse action is one that is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.

In general, "'prisoners are expected to endure more than the average citizen,' and so not every objectionable act directed at a prisoner constitutes adverse action sufficient to deter a person of ordinary firmness from engaging in protected activities." *Reynolds–Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011) (quoting *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005)). As the Sixth Circuit has explained:

> Examples of adverse actions that this Court has held sufficient to meet the "person of ordinary firmness" standard include initiating a retaliatory

> transfer to another prison when it will result in foreseeable negative consequences to the prisoner, *Siggers–El*, 412 F.3d at 701-02, threatening to impose disciplinary sanctions, *Scott v. Churchill*, 377 F.3d 565, 571-72 (6th Cir. 2004), issuing major misconduct reports that could result in loss of disciplinary credits, *Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007), and threatening the use of physical force, *Thaddeus–X*, 175 F.3d at 398. On the other hand . . . "the single search of a prison cubicle would not deter a person of 'ordinary firmness' from pursuing constitutional grievances." *Tate v. Campbell*, 85 F. App'x 413, 417 (6th Cir. 2003) (unpublished). Other routine inconveniences of prison life also do not constitute adverse action. *See, e.g.*, *Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 358 (6th Cir. 2006) (unpublished) (transfer of inmate to another prison in the absence of "foreseeable consequences to the transfer that would inhibit the prisoner's ability to access the courts" is not adverse action); *Harbin–Bey v. Rutter*, 420 F.3d 571, 579-80 (6th Cir. 2005) (defendant's filing of "Notices of Intent to Conduct an Administrative Hearing," which did not result in loss of inmate privileges, did not qualify as "adverse action").

*Reynolds–Bey*, 428 F. App'x at 503.

A pat-down search is undoubtedly a "routine inconvenience" of prison life. Indeed, many courts have concluded that subjecting a prisoner to a pat-down search is not sufficiently adverse to support a retaliation claim. *See Ollie v. Hodge*, No. 3:13-CV-1181-NJR-DGW, 2015 WL 8481679, at *4 (S.D. Ill. Dec. 10, 2015) ("routine pat-down searches" do not give rise to a retaliation claim); *White v. Stephens*, No. 13–cv–2173–JDT–tmp, 2015 WL 6038014, at *7 (W.D. Tenn. Aug. 28, 2015) (a pat-down search perceived as "invasive" is not an adverse action); *Massey v. Tasi*, No. 1:13 cv 00633, 2014 WL 2465851, at *3 (E.D. Cal. May 29, 2014) ("A single pat down search, whatever the motivation, fails to state a claim for retaliation."); *Buckley v. Alameida*, No. 1:04–cv–05688–OWW–GBC PC, 2011 WL 7139570, at *4 (E.D. Cal. Dec. 20, 2011) ("[R]epeated routine pat-down searches as a prisoner repeatedly goes back and forth between his cell and administrative or community areas of the prison do not demonstrate the existence of an adverse action."); *McClenton v. Menifee*, No. 05 Civ. 2844(JGK), 2009 WL 195764, at *4 (S.D.N.Y. Jan. 12, 2009) ("Like cell searches, a routine pat [down] search of an inmate may be conducted at any time, and would therefore not deter an inmate of ordinary firmness from

continuing to file grievances against prison officials.") (footnote omitted). The Sixth Circuit suggested the same thing in *Reynolds-Bey*, indicating that "[a] single shakedown, unaccompanied by excessive use of force, verbal threats, a pattern of previous questionable shakedowns or other such factors, would not meet the adverse action standard." *Reynolds-Bey*, 428 F. App'x at 503-04. *Cf. Gleason v. Franklin*, No. CV 15-8380-CBM (DFM), 2017 WL 3203404, at *5 (C.D. Cal. May 16, 2012) (two non-routine pat-down searches accompanied by threats of violence, obscenities, sexual remarks, and direct contact with the prisoner's buttocks underneath his clothing are sufficiently adverse to state a retaliation claim).

In *Reynolds-Bey*, the plaintiff alleged that the prison official yelled at him and made an implied threat while conducting a shakedown of his person outside the prison dining hall. *Id.* at 495. The threat involved the use of a racial slur, which carried an implicit threat of violence. *Id.* at 504. In addition, the official allegedly stated that the plaintiff would "always stay on my list," and that the plaintiff "was the one," which could be interpreted as a serious threat. *Id.* The court found that these facts presented a "close issue," but held that the defendant's conduct was sufficient to deter a person of ordinary firmness from engaging in protected conduct.

In contrast, Plaintiff alleges no similar facts about the nature of Rogers' two pat-down searches which would indicate that they were any different from a routine pat-down search. As indicated above, Plaintiff describes the searches as "sexually degrading" and "sexually exploitative," but he does not support these subjective characterizations with any facts. Thus, his allegations do not distinguish the pat-down searches by Rogers from the sort of routine searches that prisoners are expected to endure.

Moreover, Defendant's vague threat to "get" Plaintiff does not carry the same seriousness as the racially-charged threat in *Reynolds-Bey*. Indeed, in context, Rogers' threats to

13

"get" Plaintiff implied that he would conduct a pat-down search. For the same reason that a pat-down search is not an adverse action, a threat to conduct such a search cannot be an adverse action.

Plaintiff also contends that Rogers filed a "false" and "retaliatory" misconduct ticket against him, which might suffice to be an adverse action. Apart from the temporal proximity between this ticket and Defendant's most recent grievance, however, there are no facts suggesting that this ticket was motivated by Plaintiff's protected conduct. Accordingly, for all the foregoing reasons, Plaintiff fails to state a retaliation claim.

**C. Due Process**

Plaintiff also contends that Defendants' conduct deprived him of due process. There are two types of due process claims: procedural due process claims and substantive due process claims. Plaintiff does not state either type of claim.

1. Procedural Due Process

The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). Plaintiff does not allege that he was deprived of protected property or liberty interest. He contends that Rogers conducted several pat-down searches, but Plaintiff does not have a liberty interest in avoiding pat-down searches, and prison officials are not required to provide prisoners a hearing or any other procedure before conducting one.

Plaintiff also alleges that Rogers charged him with a misconduct. Plaintiff does not allege any consequences as a result of this charge, however. Thus, he does not allege that the charge deprived him of anything, let alone a protected interest.

Furthermore, Plaintiff does not have a right to an effective investigation of his grievances. Courts repeatedly have held that there exists no constitutionally protected due process

right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

Because Plaintiff has no liberty interest at stake in the prison grievance process, Defendant Belanger's conduct did not deprive him of due process. In other words, Plaintiff does not state a procedural due process claim. "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007).

In addition, Plaintiff does not have a right to compel an investigation of another person. *See Diamond v. Charles*, 476 U.S. 54, 64-65 (1986); *Jacoby v. PREA Coordinator*, No. 517CV00053MHHTMP, 2017 WL 2962858, at *4 (N.D. Ala. Apr. 4, 2017) ("Whether an inadequate investigation, or the failure to investigate at all, no § 1983 liability is created."), report and recommendation adopted, 2017 WL 2957825 (N.D. Ala. July 11, 2017).

2. Substantive Due Process

Nor does Plaintiff state a substantive due process claim. "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002). "Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386,

395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

The Eighth Amendment provides an explicit source of constitutional protection to Plaintiff concerning his claims of sexual harassment and abuse. *See Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety, the plaintiff's substantive due process claim was subject to dismissal). The Court has already analyzed Plaintiff's Eighth Amendment claim. Plaintiff does not state a separate claim for substantive due process.

For all the foregoing reasons, Plaintiff does not state a due process claim.

IV. 42 U.S.C. § 1985

Plaintiff cites 42 U.S.C. § 1985 as a basis for his complaint. The only potentially applicable provision of that statute is in § 1985(3),[2] which provides a cause of action against a person involved in a conspiracy for the purpose of depriving a person or class of persons of the equal protection of the laws. To state a claim under this provision, Plaintiff must allege an act in furtherance of such a conspiracy which causes injury to a person or property or a deprivation of any right or privilege of a citizen of the United States. *See Collyer v. Darling*, 98 F.3d 211, 233

---

[2] Subsection (1) of § 1985 is inapplicable because Plaintiff does not allege a conspiracy to interfere with federal officers in the performance of their duties. *See* 42 U.S.C. § 1985(1). The first clause of subsection (2) is also inapplicable because Plaintiff does not allege that Defendants conspired to influence parties, witnesses, or jurors in federal court proceedings. *See* 42 U.S.C. § 1985(2). In addition, the second clause of subsection (2) is inapplicable because Plaintiff does not allege that Defendants conspired to "interfere with due process in state courts with the intent to deprive persons of their equal protection rights." *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006).

16

(6th Cir. 1996) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998). In addition, Plaintiff must allege that the conspiracy was motivated by a class-based animus, such as race. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005); *Collyer*, 98 F.3d at 233; *Johnson*, 40 F.3d at 839. Further, "conspiracy claims must be pled with some degree of specificity . . . .vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987).

Plaintiff's claim fails because he does not allege any facts from which to reasonably infer an agreement between Defendants to deprive him of a federal right.

V. <u>42 U.S.C. § 1997</u>

The Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997, permits the United States Attorney General to bring suit against the prison or state for deplorable conditions in prisons. Sections 1997a-c set forth the parameters of the Attorney General's authority to bring suit. Section 1997e requires prisoners who bring suit on their own behalf to exhaust all administrative remedies prior to bringing their action in federal court. Sections 1997f through 1997h concern reporting to Congress and appropriation of funds. Section 1997i clarifies that the statute does not authorize regulations defining standards of care, and section 1997j merely clarifies that the statute "shall in no way expand or restrict the authority of parties other than the United States to force the legal rights which they may have pursuant to existing law[.]" 42 U.S.C. § 1997j. None of the foregoing sections applies to this matter.

It is possible that Plaintiff relies on section 1997d, which provides that "[n]o person reporting conditions which may constitute a violation of this subchapter shall be subjected to retaliation in any manner for so reporting." 42 U.S.C. § 1997d. This section does not create a cause of action, however. *See Price v. Brittain*, 874 F.2d 252, 263 (5th Cir. 1989); *McRorie v.*

*Shimoda*, 795 F.2d 780, 782 n.3 (9th Cir. 1986); *Pope v. Bernard*, No. 10-1443, 2011 WL 478055, at *1 (1st Cir. Feb. 10, 2011). Consequently, Plaintiff cannot bring a claim under 42 U.S.C. § 1997.

VI. State Law

Plaintiff also invokes Michigan state law, including the Michigan Elliot-Larsen Civil Rights Act, as a basis for his suit. Plaintiff fails to state a claim under federal law. The Court declines to exercise supplemental jurisdiction over any claim that he has under state law. "Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." *Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). "Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006). These factors weigh against the continued exercise of jurisdiction over Plaintiff's state-law claims. Accordingly, these claims will be dismissed without prejudice.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the federal claims against Defendants will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss Plaintiff's claims under state law because the Court declines to exercise supplemental jurisdiction over them. 28 U.S.C. § 1327(c)(3).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the

$505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   December 19, 2018                           /s/ Paul L. Maloney
                                                    Paul L. Maloney
                                                    United States District Judge